In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3073

IN THE MATTER OF:

CAROL S. ANDERSON AND MARK R. ANDERSON,

*Debtors*.

APPEAL OF:

BMO HARRIS BANK, N.A.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16 C 4748 — **Jorge L. Alonso**, *Judge*.

ARGUED SEPTEMBER 17, 2018 — DECIDED FEBRUARY 26, 2019

Before EASTERBROOK, KANNE, and BRENNAN, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Mark Anderson and Walter Kaiser jointly borrowed about $700,000 from BMO Harris Bank; the loan was secured by a mortgage. They did not pay, and the Bank filed a foreclosure action in state court. That action was put on hold when Anderson and his wife (who need not be mentioned again) commenced a bankruptcy proceeding. After the Bank asked Bankruptcy Judge Cox to

lift the automatic stay under 11 U.S.C. §362 she entered an order granting "full and complete relief from the Automatic Stay of Section 362 to permit BMO HARRIS BANK to proceed with the pending State Court foreclosure litigation with respect to the property commonly known as 151 W. Wing St., Unit 905, Arlington Heights, Illinois 60005 as more particularly described in the Motion for Relief."

Back in state court the Bank asked the judge to put the property up for auction. That was done, and the sale was confirmed. After the sale the Bank asked for a deficiency judgment against Kaiser but not against Anderson. (Earlier the Bank had requested a deficiency judgment against both borrowers, but it did not repeat this after the sale.) The state judge awarded the Bank about $650,000 *in personam* against Kaiser, but with respect to Anderson the judgment was *in rem* only (that is, without recourse against Anderson). The Bank did not appeal the omission of a deficiency judgment against Anderson.

The state litigation ended in April 2015, but the federal litigation continues. The Bank made a claim against Anderson for the same $650,000 shortfall that the state judge had awarded against Kaiser. (Anderson and Kaiser are jointly and severally liable on the loan.) Anderson asked Judge Cox to hold that the state court's judgment extinguished the Bank's claim through the doctrine of claim preclusion: the Bank could have received a deficiency judgment against Anderson but did not, and Illinois does not allow single claims to be split into multiple suits or litigated in multiple forums. Judge Cox denied this motion, and Anderson took an interlocutory appeal under 28 U.S.C. §158(a)(3). The district court reversed, holding that the absence of a deficiency judgment

against Anderson in the state case blocks any further proceedings against him related to this loan. 2017 U.S. Dist. LEXIS 142599 (N.D. Ill. Sept. 5, 2017).

The Bank immediately appealed to us. Unlike the district court, which can accept interlocutory appeals under §158(a)(3), our jurisdiction is limited to final decisions. 28 U.S.C. §158(d)(1). (There are exceptions for appeals direct from bankruptcy courts to the courts of appeals, see §158(d)(2), but none applies.) We directed the parties to file supplemental memoranda discussing appellate jurisdiction, particularly because the Bank's claim arose as a contested matter in the main proceeding rather than as an adversary action, the usual source of appellate business when the main proceeding continues in the bankruptcy court. The memoranda have been received, and we can proceed to decision.

Many opinions in this circuit conclude that a district court's decision is "final" under §158(d)(1) when it conclusively resolves the sort of dispute that would be a stand-alone case outside of bankruptcy. See, e.g., *Schaumburg Bank & Trust Co. v. Alsterda*, 815 F.3d 306, 312–13 (7th Cir. 2016); *In re Wade*, 991 F.2d 402, 406 (7th Cir. 1993). *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015), implies approval of these decisions. A claim to foreclose a mortgage and collect a deficiency judgment on the note is a common stand-alone dispute outside of bankruptcy, so it is covered by this principle. And we do not see any reason why it should matter whether a dispute that could have been a stand-alone suit outside bankruptcy has been resolved in an adversary proceeding or a contested matter. This circuit has several times accepted appeals from final decisions in contested matters. See, e.g., *In re UAL Corp.*, 408 F.3d 847, 850 (7th Cir. 2005). Although

these might be disparaged as drive-by jurisdictional rulings, see *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 91 (1998), we lack a good reason to depart from them given the absence of any such distinction in the statutory text.

One potential jurisdictional problem remains, however. Some of our decisions say that an appeal under §158(d)(1) is possible "only if the bankruptcy court's original order and the district court's order reviewing the bankruptcy court's original order are both final." *In re Rimsat, Ltd.*, 212 F.3d 1039, 1044 (7th Cir. 2000). See also, e.g., *In re Salem*, 465 F.3d 767, 771 (7th Cir. 2006); *Zedan v. Habash*, 529 F.3d 398, 402 (7th Cir. 2008); *Schaumburg Bank*, 815 F.3d at 312. Although the district court's order is final, the bankruptcy court's order was not: Judge Cox denied a motion to dismiss the claim but left open questions such as whether the Bank is entitled to a deficiency judgment and, if so, how much. If we take literally the language in *Rimsat* and other opinions, we must dismiss this appeal.

We do not think, however, that *Rimsat* and similar cases foreclose appeals of all disputes in which the district court's jurisdiction rests on §158(a)(3). All of the decisions cited in the preceding paragraph—and there are more, cited in turn in those opinions—arise from appeals taken under 28 U.S.C. §158(d)(1), which provides: "The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section." Subsection (a), the only one relevant here, deals with proceedings in the district court, not the bankruptcy court. The statute thus asks whether *the district court's* decision is final, not whether the bankruptcy court's was. We could not adhere to the position that an interlocutory bank-

ruptcy-court decision, followed by a final district-court deci-
sion, is not appealable, without contradicting the statute.

As far as we can see, none of the opinions in which this
language appears stems from the sequence we have: an in-
terlocutory decision by the bankruptcy judge, followed by a
final decision in the district court. (Final because, after the
district court's decision, there is no more work for the bank-
ruptcy judge to do.) In *Rimsat*, *Salem*, and *Zedan* both deci-
sions were final (so appeal was not problematic); in *Schaum-
burg Bank* both decisions were interlocutory, so the absence
of appellate jurisdiction also was straightforward. The "both
decisions must be final" language matters only when one
court has rendered a final decision and the other has not.

For example, suppose that the order of decision in this
case had been reversed: Judge Cox found the Bank's claim
precluded, and the district court disagreed, directing the
bankruptcy court to determine how much (if anything) An-
derson owed to the Bank. In that sequence an appeal to this
court would not have been authorized—not because one de-
cision was final and the other not, but because *the district
court's decision, in particular,* would not have been final. See,
e.g., *In re Rockford Products Corp.*, 741 F.3d 730, 733 (7th Cir.
2013); *In re Gordon*, 743 F.3d 720, 723 (10th Cir. 2014).

But when an interlocutory decision by a bankruptcy
judge is reversed by a ruling that leaves no more work for
either the bankruptcy court or the district court, the decision
is canonically final, making an appeal under §158(d)(1)
proper. That's our situation.

To put this differently, if the district court's order leaves
more work to be done (other than a ministerial action) in *ei-*

*ther* the bankruptcy court or the district court, the district
court's order is itself not final. An immediate appeal could
not conclusively resolve the case, because the loose ends still
to be tied up (in the bankruptcy court or the district court)
could generate another appeal, violating the policy against
piecemeal appeals. Here, by contrast, the district court's de-
cision leaves nothing more to be done there or in the bank-
ruptcy court: the Bank's claim against Anderson is done (un-
less we reverse).

A table may help to visualize the four possibilities:

|  | **Bankruptcy court decision final** | **Bankruptcy court decision interloc-utory** |
|---|---|---|
| **District court de-cision final** | Appealable (e.g., *Rimsat*) | Appealable (this case) |
| **District court de-cision interloc-utory** | Not appealable (e.g., *Rockford Products*) | Not appealable (e.g., *Schaumburg Bank*) |

Our conclusion is consistent with the holding of every case
we could find. But because we disapprove language that has
been repeated in many of the circuit's decisions, we have cir-
culated this opinion to all judges in active service. See Cir-
cuit Rule 40(e). None favored a hearing en banc.

On to the merits. The parties begin their presentation by
asking whether Judge Cox's order authorized the state court
to enter a judgment against Anderson *in personam*. They dis-
cuss the state's law of preclusion only as a secondary con-
sideration. This is backward. The effect of a state court's de-

cision depends on state law. Judgments of state courts "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. §1738. So we must ask whether the Bank could seek further relief from Anderson by a new suit in the courts of Illinois. Only if the answer is no must we inquire whether something about the automatic stay or Judge Cox's order supersedes §1738.

Illinois requires litigants to present in a single proceeding all of their theories arising from one transaction. In other words, it disallows claim splitting. See, e.g., *GE Frankona Reinsurance Co. v. Legion Indemnity Co.*, 373 Ill. App. 3d 969 (2007). A recent decision applies this understanding to real-estate foreclosure and holds that creditors who do not ask for deficiency judgments in the foreclosure actions cannot seek that relief later, in a different proceeding. See *LSREF2 Nova Investments III, LLC v. Coleman*, 2015 IL App (1st) 140184. The Bank observes that some earlier decisions take the mortgage and note to be separate transactions, despite their close relation, and permitted each to be sued on separately. See, e.g., *Turczak v. First American Bank*, 2013 IL App (1st) 121964; *LP XXVI, LLC v. Goldstein*, 349 Ill. App. 3d 237 (2004).

We need not try to anticipate how the Supreme Court of Illinois would reconcile this apparent conflict, because all of the state's authorities agree that, if a litigant presents both the mortgage and the note in a single action, and fails to seek a deficiency judgment on the note, it cannot do so in a separate suit. That's what happened here. The Bank filed a two-count complaint seeking relief under both the mortgage

(count one) and the note (count two). Once the property had been sold, however, it did not pursue a deficiency judgment against Anderson. We could not find any state decision that permits a lender to do this and still try to get a deficiency judgment on the note in some separate proceeding. And if the Bank cannot get such a judgment in state court, then under §1738 it cannot get one in federal court either.

To this the Bank responds that the state court's decision is not final—after all, it leaves dangling the complaint's request for a deficiency judgment against Anderson. If the judgment is not final, it lacks preclusive effect. But the state judge did not reserve any question for future decision. When granting summary judgment to the Bank, the judge stated that she was entering judgment "under Counts I and II of the Second Amended Complaint" (that is, both the court seeking a deficiency judgment and the one seeking foreclosure). She also stated that the matter remained pending, but just for the purposes of enforcing the decision and confirming the sale. Illinois treats a foreclosure action as finally decided once the "court enters an order approving the sale and directing the distribution." *EMC Mortgage Corp. v. Kemp*, 2012 IL 113419 ¶11. The trial court entered such an order in April 2015, and in almost four years since there has not been any hint from the judge that she considers the job unfinished—nor has the Bank asked the judge to do anything further. We conclude that the decision is final.

The Bank tells us that the state judiciary might permit it to reopen the proceeding to seek a deficiency judgment against Anderson. Maybe so, but the Bank has not asked. We must apply §1738 to the decision on the books.

The Bank insists, however, that claim preclusion is irrelevant because §362, the automatic stay in bankruptcy, deprived the state court of "jurisdiction" to make any decision at all, except to the extent allowed by the bankruptcy judge—and the Bank believes that a state court's judgment cannot affect any matter over which it lacks jurisdiction. This line of argument is doubly wrong.

First, §362(a) does not concern jurisdiction. It provides that the filing of a bankruptcy action "operates as a stay" of certain matters. It does not establish exclusive federal jurisdiction over any of those matters. One of the things the state court had jurisdiction to decide was the meaning of the bankruptcy court's order lifting the automatic stay. If the Bank had asked for a judgment *in personam* against Anderson, he might have replied (contrary to the position he takes in this court) that Judge Cox's order did not allow this. If the state court agreed with that view, it might have held the case open to allow deficiency-judgment proceedings after the bankruptcy ended. But the Bank did not ask, and the state court never had to decide what effect to give to either the automatic stay or Judge Cox's order. Having bypassed this matter in state court, the Bank is not well situated to ask us to decide what the state court might have done, had it been asked. The one thing it would not have done is declare that it lacked jurisdiction.

Second, even federal statutes that do provide for exclusive jurisdiction, such as the antitrust laws, do not supersede §1738. That's the holding of *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373 (1985). Marrese sued in Illinois under a state-law theory. After losing, he filed an antitrust suit, in federal court, concerning the same transac-

tions. The Supreme Court held that §1738 and state-law rules of preclusion govern the defense of preclusion in the federal suit even though federal courts have exclusive jurisdiction of federal antitrust claims. That's equally true of claims pending in bankruptcy, even if we were to attach the "jurisdictional" label to the automatic stay.

*Marrese* considered but rejected the possibility that the antitrust laws could be deemed to supersede §1738 by establishing exclusive federal jurisdiction. 470 U.S. at 380–81. See also *Kremer v. Chemical Construction Corp.*, 456 U.S. 461 (1982) (federal civil-rights laws do not modify §1738). Section 362 of the Bankruptcy Code, which does not address §1738, should be treated the same for this purpose as federal antitrust and civil-rights laws.

*Marrese* mentioned that state law might itself carve out matters over which state courts lack jurisdiction. See 470 U.S. at 373, citing *Restatement (Second) of Judgments* §26(1)(c) (1982). That possibility need not detain us. The Bank could have asked the state court to determine for itself how far Judge Cox's order lifted the stay. If Anderson took in the state court the same view he takes here—that Judge Cox's order lifted the stay in full and allowed the state tribunal to exercise plenary power over the Bank's claims—the whole dispute would have been wrapped up then and there. The state court was not powerless.

For the reasons we have given, it is unnecessary to determine the meaning of Judge Cox's order. Anderson emphasizes the words "full and complete relief," while the Bank asserts that the reference to the property securing the loan implies that the stay had been lifted with respect to the mortgage and not the note. The Bank wants us to construe

orders lifting or modifying the automatic stay "strictly" against creditors (though it is hard to see why banks would think that such a rule favors them). A few courts have issued opinions articulating a strict-construction norm. We need not decide but are skeptical. Why create a presumption against permitting a state court to decide issues of state law?

One set of problems in bankruptcy law comes from the fact that bankruptcy judges lack the salary and tenure protections of Article III, which means that they cannot exercise the same powers as district judges over disputes arising under state law. See *Stern v. Marshall*, 564 U.S. 462 (2011); *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982). Bankruptcy judges may transfer authority over state-law claims (or whole cases) to district judges, and they may relinquish authority in favor of state courts. 28 U.S.C. §1334. Having filed a claim in Anderson's bankruptcy, the Bank could not complain about the bankruptcy judge's limited tenure-and-salary protections. But a bankruptcy judge remains free to think that some claims can be resolved more quickly, or more appropriately, by the state courts. Judge Cox made that decision at least about the Bank's attempt to foreclose on the mortgage. Having made that decision, it would be odd to want to duplicate the proceedings, even in part, by reserving the deficiency judgment to herself. Why interpret the order to produce two proceedings when one suffices?

Allowing the state judiciary to enter a deficiency judgment in a foreclosure proceeding does not undermine any function of bankruptcy law. If the state judge had held that Kaiser and Anderson are jointly and severally liable for the $650,000 deficiency, the Bank's claim still would have re-

turned to the bankruptcy court for it to resolve any disputes about the priority of competing claims against Anderson's assets and whether any particular debt should be discharged. Trying to get around the application of §1738 or reading Judge Cox's order narrowly to compel the sort of claim splitting forbidden by state law would not serve any goal of federal bankruptcy policy. It would simply prolong litigation. (Indeed, on the Bank's current understanding the state court could and perhaps should have left the foreclosure proceeding in stasis until it had indubitable authority to resolve the whole case. That would not have served either the Bank's interests or Anderson's.)

The Bank had its chance in state court and did not use it. It is too late to hold Anderson liable for a deficiency judgment. The Bank must be content with what it can collect from Kaiser.

AFFIRMED