In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-3244

DONALD WAYNE BUSH and KIMBERLY ANN BUSH,

*Plaintiffs-Appellants*,

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:15-cv-1318-WTL-DKL — **William T. Lawrence**, *Judge*.

ON REHEARING — DECIDED APRIL 29, 2024

Before SYKES, *Chief Judge*, and FLAUM and EASTERBROOK, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Our original decision in this case remanded to the district court with instructions to send the dispute to the Tax Court. 939 F.3d 839 (7th Cir. 2019). All parties petitioned for rehearing and rehearing en banc. After considering supplemental filings the panel has decided to grant rehearing and revise our decision. What follows is an amended opinion, which repeats much of the original opinion

so that readers can follow the reasoning and understand the full decision. (To the extent that the original decision is unchanged, both rehearing and rehearing en banc are denied. No judge in active service has called for a vote on the petitions for rehearing en banc.)

* * * * *

This appeal presents the question whether a bankruptcy court can determine the amount of a debtor's tax obligations, when the debtor is unlikely to pay them. Bankruptcy Judge Carr answered yes and scheduled a trial on the merits, 2015 Bankr. LEXIS 4494 (Bankr. S.D. Ind. July 7, 2015), but a district judge disagreed. 2016 U.S. Dist. LEXIS 106671 (S.D. Ind. Aug. 12, 2016). The interlocutory appeal to the district judge was authorized by 28 U.S.C. §158(a)(3). Because the district judge blocked further proceedings in the bankruptcy court, his decision is final and appealable to us under 28 U.S.C. §1291, for, outside of bankruptcy, tax obligations are stand-alone matters independently appealable. See *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501–02 (2015). See also *In re Anderson*, 917 F.3d 566 (7th Cir. 2019).

The dispute began in 2013 when the Internal Revenue Service demanded that Donald and Kimberly Bush pay $107,000 in taxes, plus $80,000 in fraud penalties, for tax years 2009, 2010, and 2011. (We round all figures to the nearest thousand.) The Bushes petitioned the Tax Court for review. By the time trial was imminent the parties had stipulated that the Bushes owed $100,000 in taxes, but penalties remained in dispute: the IRS sought a 75% fraud penalty under 26 U.S.C. §6663(a), while the Bushes proposed a 20% negligence penalty under 26 U.S.C. §6662(a). On the date set for trial, the Bushes filed for bankruptcy, and the automatic stay prevented the Tax

Court from proceeding. The bankruptcy court declined to lift the stay. The United States did not appeal but did file a proof of claim seeking taxes and penalties. It also proposed that the tax debt be given priority over the Bushes' other unsecured debts, while the penalty (whatever its ultimate amount) be determined to be nondischargeable under 11 U.S.C. §523(a)(7). The Bushes then initiated an adversary proceeding, asking the bankruptcy court to set the penalty at 20% of their unpaid taxes.

The Bushes pointed the bankruptcy court to 11 U.S.C. §505(a)(1), which reads:

> Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

The United States concedes that paragraph (2) does not apply to its dispute with the Bushes. But it argues that §505 as a whole does not grant subject-matter jurisdiction to bankruptcy judges and that only a potential effect on creditors' distributions justifies a decision by a bankruptcy judge about any tax dispute. The Bushes insisted that §505 does supply jurisdiction, a view that the bankruptcy judge accepted and the district judge did not. The parties' briefs in this court continue the debate about the "jurisdictional" nature of §505.

This is unfortunate, though we grant that other circuits writing about §505 have used a "jurisdictional" characterization. See, e.g., *In re Luongo*, 259 F.3d 323, 328 (5th Cir. 2001) (calling §505 a "broad grant of jurisdiction"); *In re Custom Distribution Services, Inc.*, 224 F.3d 235, 239–40 (3d Cir. 2000) ("We

have consistently interpreted §505(a) as a jurisdictional statute"). But we do not see what §505 has to do with jurisdiction, a word it does not use. Section 505 simply sets out a task for bankruptcy judges. Almost the entirety of the Bankruptcy Code prescribes tasks for bankruptcy judges. For example, §503 tells bankruptcy judges how to determine administrative expenses, and §547 provides for resolution of trustees' preference-recovery actions. Those and other sections in the Code are unrelated to jurisdiction, just as few of the many thousand substantive rules in the United States Code as a whole concern jurisdiction.

The Supreme Court insists that judges distinguish procedural and substantive rules from jurisdictional ones. See, e.g., *Fort Bend v. Davis*, 139 S. Ct. 1843 (2019); *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015); *Gonzalez v. Thaler*, 565 U.S. 134 (2012). The rule in §505 is on the non-jurisdictional side. The Justices have acknowledged that in earlier years they used the word "jurisdiction" loosely, and our colleagues in other circuits may have been influenced by that old usage when calling §505 "jurisdictional." But the Supreme Court has restricted the category of laws that can be called jurisdictional, and we must follow its current understanding of that term.

Most genuine jurisdictional rules appear in Title 28, the Judicial Code, and that's true of bankruptcy too. The Bankruptcy Code itself tells us this. Section 105(c) reads: "The ability of any district judge or other officer or employee of a district court to exercise any of the authority or responsibilities conferred upon the court under this title shall be determined by reference to the provisions relating to such judge, officer, or employee set forth in title 28." Bankruptcy judges act as officers of the district courts, see 28 U.S.C. §157(a), so §105(c)

means that bankruptcy jurisdiction depends on Title 28. See also *Wellness International Network, Ltd. v. Sharif*, 575 U.S. 665, 669–70 (2015).

And Title 28 addresses bankruptcy jurisdiction in detail:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

(c)(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

(d) Any decision to abstain or not to abstain made under subsection (c) (other than a decision not to abstain in a proceeding described in subsection (c)(2)) is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title. Subsection (c) and this subsection shall not be construed to limit the applicability of the stay provided for by

section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

(e) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction—

(1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate; and

(2) over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327.

28 U.S.C. §1334. Other grants of jurisdiction also may apply. A provision allowing district courts to resolve certain tax disputes, 28 U.S.C. §1346(a)(1), comes to mind. But the parties disregard it, and so shall we. The Bushes, as the proponents of jurisdiction, are entitled to choose which grants they rely on.

The United States protests that sovereign immunity negates any jurisdiction based on §1334, but 11 U.S.C. §106(a)(1) waives that defense for subjects within §505. What is more, we have held that sovereign immunity does not affect subject-matter jurisdiction. See *United States v. Cook County*, 167 F.3d 381 (7th Cir. 1999).

Section 1334 creates jurisdiction for three potentially relevant categories of disputes: those "arising in" bankruptcy litigation, those "arising under" the Bankruptcy Code, and those "related to" the resolution of the bankruptcy proceeding. The Bushes rely on all three; the United States contends that none applies. We take them in order.

A dispute "arises in" bankruptcy if it concerns a matter that is exclusive to bankruptcy law and practice. See *In re Repository Technologies, Inc.*, 601 F.3d 710, 719 (7th Cir. 2010). A

proceeding to determine taxes and penalties does not arise in bankruptcy in this sense. As we have mentioned, it was set for trial in the Tax Court until the Bushes filed their petition under Title 11. Most tax disputes are resolved outside of bankruptcy. The requirements of "arises in" jurisdiction have not been satisfied.

A dispute "arises under" the Bankruptcy Code when it presents a substantive question of bankruptcy law. See, e.g., *Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir. 1990). This tax dispute's substance depends on the Internal Revenue Code, not the Bankruptcy Code, so the "arising under" grant of jurisdiction is unavailable.

What remains is the "related to" jurisdiction in the second clause of §1334(b), which is how most non-bankruptcy issues, such as tort and contract disputes, come within a bankruptcy judge's powers. The Bushes contend that, if this jurisdiction permits a bankruptcy judge to resolve a contract dispute, it also permits a bankruptcy judge to resolve a tax dispute.

Language in *In re Collazo*, 817 F.3d 1047, 1053 (7th Cir. 2016), suggesting that entry of a money judgment following the conclusion of a bankruptcy always is "related to" that bankruptcy for the purpose of §1334(b), is unreasoned and has the quality of a drive-by ruling, subject to ready reexamination. See *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 91 (1998). We do not think that the unreasoned language of *Collazo* can be given effect, particularly in light of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), and *Stern v. Marshall*, 564 U.S. 462 (2011), which observe that the permissible authority of judges (including bankruptcy judges) who lack life tenure is limited.

The difficulties in allocating authority between Article I and Article III tribunals, and between federal and state courts, when a dispute is "related to" bankruptcy but not part of it, need not concern us today, however. After all, disputes about the financial demands of the Internal Revenue Service always are resolved by federal rather than state tribunals—and the alternative to resolution by a bankruptcy judge serving under Article I is resolution by a judge of the Tax Court serving under Article I. Whether the bankruptcy judge or the Tax Court judge makes the initial decision, the disposition is subject to review by one or more judges serving under Article III. The constitutional and prudential concerns that have led to limits on the "related to" jurisdiction for state-law disputes are not salient to federal tax disputes.

The United States does not contend that resolution of tax disputes is *never* "related to" a bankruptcy. Instead it maintains that the tax dispute is not related to *this* bankruptcy, because the disposition will not affect other creditors' entitlements. It points to *In re FedPak Systems, Inc.*, 80 F.3d 207, 213–14 (7th Cir. 1996), which states that a dispute is "related to" bankruptcy when resolution "affects the amount of property for distribution [to creditors] or the allocation of property among creditors." See also, e.g., *In re Kubly*, 818 F.2d 643 (7th Cir. 1987); *In re Xonics, Inc.*, 813 F.2d 127 (7th Cir. 1987). That condition is not met here, the United States maintains, because other creditors' claims exceed the Bushes' assets. The existence of insufficient assets would not by itself be enough to demonstrate the lack of a relation, for the size of any one debt may affect the allocation among creditors. But tax debts are subordinated to many other claims, so determining taxes and penalties has no effect here.

This line of argument suggests that the statement in *FedPak* needs a qualification. If the related-to jurisdiction really depends on how things look at the end of the bankruptcy—if jurisdiction turns, for example, on how many other claims eventually are presented—then authority cannot be determined at the time of filing. Yet one of the most fundamental rules of federal jurisdiction is that judicial authority depends on the state of affairs when a case begins (equivalently, when a claim is filed in bankruptcy) rather than on how things turn out. See, e.g., *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570–71 (2004); *Freeport-McMoRan Inc. v. K N Energy, Inc.*, 498 U.S. 426 (1991); *Louisville, New Albany & Chicago Ry. v. Louisville Trust Co.*, 174 U.S. 552, 566 (1899); *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539–40 (1824); *Gardynski-Leschuk v. Ford Motor Co.*, 142 F.3d 955 (7th Cir. 1998). And when the Bushes filed their motion under §505, just two months into their bankruptcy, only three creditors' claims had been filed against them.

Instead of asking us to evaluate the potential effect of the tax debt near the start of the bankruptcy, the United States draws our attention to the fact that many creditors had filed claims against the Bushes by the time the bankruptcy judge proposed to resolve the tax dispute. By *then* it seemed unlikely that the amount the Bushes owe in taxes and penalties would affect other creditors. But taking that *ex post* view would contradict the norm that jurisdictional issues must be resolved *ex ante*, not in light of how things turn out.

The Supreme Court's most recent engagement with the related-to jurisdiction favorably quoted a rule, which it attributed to nine courts of appeals, that a matter comes within the related-to jurisdiction if it "could conceivably have any

effect on the estate being administered in bankruptcy". *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1996). That's an *ex ante* inquiry and avoids making a jurisdictional decision only after the merits have been resolved and the effect can be known with certainty. Under this approach, the §505 motion is within the related-to jurisdiction because it might well have mattered if no further creditors had made claims.

*Celotex* said that our circuit uses a "slightly different test" and pointed to *Xonics* and *Home Insurance Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746 (7th Cir. 1989). *Xonics* dealt with a different problem: whether the related-to jurisdiction follows an asset after it leaves the estate. We held that it does not: that an asset's chain of title includes a trip through bankruptcy does not make the asset a ward of the bankruptcy court forever. *Xonics* does, however, contain the phrase "affects the amount of property available for distribution or the allocation of property among creditors." 813 F.2d at 131. *Home Insurance* quoted this language, which also is the genesis of the statement in *FedPak*.

None of our decisions addresses the distinction between *ex ante* and *ex post* perspectives. None considers the potential difference between demanding an actual effect at the case's end and a potential effect when the claim is filed. The nine circuits that *have* addressed that subject unanimously conclude that the *ex ante* perspective is the right one. We agree. This does not imply an overruling or even a modification of circuit precedent; instead we address an issue that the circuit has not previously considered and align this circuit with the view widely held by our colleagues elsewhere: the related-to jurisdiction must be assessed at the outset of the dispute, and

it is satisfied when the resolution has a potential effect on other creditors.

This leads to the question whether, on the date the Bushes asked the bankruptcy judge to determine their tax liabilities, a decision could have affected the allocation of assets among the creditors with outstanding claims. When seeking rehearing the United States contended that the answer is "no." In a response, the Bushes maintain that the answer is "yes." This subject was not addressed by either the district court or the parties' principal briefs. We think that further proceedings are necessary in the district court, unless the parties can agree on remand.

There remains one potential question. Suppose the district judge agrees with the Bushes that the answer is "yes" and that the related-to jurisdiction therefore applies. Should the court nonetheless abstain in favor of the Tax Court? When the bankruptcy began, the tax dispute was on the verge of trial in the Tax Court. Only the automatic stay imposed by 11 U.S.C. §362 blocked that trial. The bankruptcy appears to be over—at least the parties have not suggested that anything remains to be done. The estate's available assets have been used to pay debts; most unpaid debts (though not the debt for 2011 tax penalties) have been discharged; the automatic stay has lapsed by its own terms; the Trustee's final report was filed on February 22, 2019. Congress has authorized district courts to relinquish jurisdiction of bankruptcy disputes "in the interest of justice", 28 U.S.C. §1334(c)(1), a phrase that may well fit given that the tax dispute stands in much the same posture as if the Bushes had never filed for bankruptcy.

The right forum for decision, however, is the district court rather than this court. The statute gives the district court the

power to relinquish jurisdiction and provides that its decision "is not reviewable by appeal or otherwise by the court of appeals". 28 U.S.C. §1334(d). *Conway v. Smith Development, Inc.*, 64 F.4th 540 (4th Cir. 2023), explores the consequences of §1334(d), and we agree with it that appellate courts must avoid resolving disputes about the application of §1334(c)(1).

The judgment of the district court is vacated, and the case is remanded with instructions (a) to determine whether the related-to jurisdiction applies in light of the analysis in this opinion and (b), if it does, to decide whether to abstain under 28 U.S.C. §1334(c).